IN THE MATTER OF: KRISTINA TAYLOR LINDSEY PIERCE

No. 647A01

(Filed 28 June 2002)

**Termination of Parental Rights— adjudicatory phase—reasonable progress within twelve months**

The trial court abused its discretion in a termination of parental rights case when it concluded the adjudicatory phase of the proceeding by deciding that there were adequate grounds to support the DSS petition for termination of a mother's parental rights based on the mother's alleged failure to make reasonable progress within twelve months in correcting those conditions which led to the removal of her child as required by N.C.G.S. § 7A-289.32, because: (1) N.C.G.S. § 7A-289.32(3) does not require a trial court to limit relevant evidence of parental progress to that which occurs in the initial twelve months of separation, and the twelve-month increment envisioned by our lawmakers was within twelve months from the time the petition for termination of parental rights is filed with the trial court; (2) the evidence tending to show that the mother used drugs and/or failed to obtain substance abuse treatment is irrelevant for purposes of establishing the mother's reasonable progress in correcting those conditions that led to the removal of her child since the events took place or evolved outside the twelve-month period preceding the petition for termination; and (3) the relevant evidence pertaining to the time frame designated in the statute demonstrates, if anything, that the mother had indeed made reasonable progress under the circumstances in correcting the conditions that led to the removal of her child.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 146 N.C. App. 641, 554 S.E.2d 25 (2001), reversing an order entered 28 December 1999 by Smith (John W.), J., in District Court, New Hanover County. Heard in the Supreme Court 16 April 2002.

*Julia Talbutt for petitioner-appellant New Hanover County Department of Social Services.*

*R. Clarke Speaks for respondent-appellee Dawn A. Cole.*

*Ruthanne Southworth, Guardian ad Litem, by Attorney Advocate Regina Floyd-Davis, appellant.*

**IN RE PIERCE**

[356 N.C. 68 (2002)]

ORR, Justice.

The New Hanover County Department of Social Services, petitioner, appeals from a Court of Appeals decision concluding that Dawn A. Cole, respondent, had made reasonable progress in correcting the conditions that led to the removal of her minor child from the family home. We affirm.

This appeal arises out of a dispute between DSS and Ms. Cole over the custody of Ms. Cole's daughter, Kristina Taylor Lindsay Pierce. At the time of her birth, on 28 June 1997, Kristina tested positive for cocaine. As a result, she was initially placed in the care of her paternal grandmother, Linda Weeks. Less than a month later, Ms. Weeks informed DSS that because of her advanced age, she could not properly care for the child. Kristina was then placed back in the care of her natural parents, Ms. Cole and James Pierce. At the time, Ms. Cole was participating in a substance treatment program. However, just two weeks later, DSS discovered that she had tested positive for cocaine at least three times since Kristina was born.

In August of 1997, a trial court awarded custody of the child to DSS, and she was placed in foster care. In October of that same year, Mr. Pierce was arrested and imprisoned. Shortly thereafter, Ms. Cole moved to Maryland to live with her mother. In June of 1998, Mr. Pierce was released from prison. Then, on 4 December 1998, Kristina was placed in the custody of Pierce's first cousin, Wendy Sellers, and her husband, Jesse Sellers, in Charlotte, North Carolina.

In the summer of 1999, DSS petitioned the trial court to terminate Ms. Cole's parental rights to the child. At the time of the hearing, which commenced in late October of 1999, Kristina was two and a half years old and continued to live with Mr. and Mrs. Sellers. Following a two-day inquiry, the trial court ultimately entered an order on 28 December 1999 terminating Ms. Cole's parental rights. On appeal by Ms. Cole, the majority of a split panel of the Court of Appeals concluded that the trial court had erred in its order. DSS, in conjunction with the child's Guardian ad Litem, then filed an appeal of right, based on the dissent, with this Court. Other facts and circumstances necessary for the discussion of the issues raised by the parties will be provided as needed.

The sole issue on appeal to this Court is whether the evidence presented at trial was sufficient to support the trial court's conclusion that Ms. Cole's parental rights with regard to her daughter, Kristina,

should be terminated. In its order, the trial court determined that Ms. Cole had failed to satisfy the State's statutory requirements for maintaining ties with her child. More specifically, the trial court determined that DSS had presented ample evidence showing that Ms. Cole had failed to make reasonable progress in correcting the adverse conditions that led to Kristina's removal from the home. We disagree, for the reasons outlined below, and thus affirm the majority holding from the Court of Appeals.

At the time DSS originally petitioned the trial court for custody of the child, in August of 1997, the relevant portion of the controlling statute provided:

> The court may terminate the parental rights upon a finding of one or more of the following:
>
> . . . .
>
> (3) The parent has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the child.

N.C.G.S. § 7A-289.32 (1998) (repealed effective 1 July 1999 and recodified in N.C.G.S. ch. 7B, art. 11).

The burden is on the petitioner, in this case, DSS, to prove the facts justifying the termination of parental rights, *see In re Nolen,* 117 N.C. App. 693, 453 S.E.2d 220 (1995), and the trial court's findings with regard to such facts must be based on clear, cogent and convincing evidence, *In re Oghenekevebe,* 123 N.C. App. 434, 473 S.E.2d 393 (1996). Thus, in order to prevail in a termination of parental rights proceeding held pursuant to N.C.G.S. § 7A-289.32(3a), the petitioner must: (1) allege and prove all facts and circumstances supporting the termination of the parent's rights; and (2) demonstrate that all proven facts and circumstances amount to clear, cogent, and convincing evidence that the termination of such rights is warranted.

In the instant case, there are numerous undisputed facts and circumstances showing that Ms. Cole willfully left the child in foster care or in placement outside the home for more than twelve months. DSS was originally granted custody of Kristina in August of 1997, and the child remained in foster care until December of 1998, when she

**IN RE PIERCE**

[356 N.C. 68 (2002)]

was placed in the care of Mr. and Mrs. Sellers. At the time of the termination hearing, which began in October of 1999, Kristina was still living with the couple. Thus, for a span of over two years, the child was living either in foster care or with Mr. and Mrs. Sellers. During this period, Ms. Cole went to live with her mother in Maryland, where she participated in a substance abuse program until June of 1998. Ms. Cole was still residing with her mother at the time of the termination proceeding. During the interim, she had procured a nursing position at a local hospital and visited her daughter only sporadically. No evidence was presented that Ms. Cole had at any time during the two-year period sought to permanently reunite herself with Kristina. As a result, in our view, DSS presented clear, cogent, and convincing facts and circumstances evidencing that Ms. Cole had willfully left the child in foster care or in placement outside the home for more than twelve months. We next examine whether there is also ample evidence showing that Ms. Cole did so without making "reasonable progress . . . within 12 months[,] in correcting those conditions which led to the removal of [her] child." N.C.G.S. § 7A-289.32(3).

In order to assess whether the evidence at trial demonstrated "reasonable progress" on the part of Ms. Cole, we must first determine what constitutes the twelve-month period within which she was expected to exhibit such progress. The dissenting opinion filed at the Court of Appeals is premised on the assumption that the twelve-month period of demonstrable reasonable progress on the part of the natural parent coincides with the initial twelve-month period of separation from the child. In other words, the parent in question must show reasonable progress in correcting the adverse conditions during the first year of separation, as measured from the time the child was placed outside the home. Thus, in the dissent's view, any evidence of facts and circumstances that transpire outside the designated twelve-month span is not directly relevant to the inquiry into reasonable progress. *In re Pierce*, 146 N.C. App. 641, 653, 554 S.E.2d 25, 32 (2001) (Hunter, J., dissenting) (concluding that the evidence [of reasonable progress] at issue falls outside of the twelve-month time frame enumerated in the statute); *see also id.* at 656-57, 554 S.E.2d at 34-35 (Hunter, J., dissenting) (stating that his conclusion is premised solely on evidence confined to the twelve-month period as established in his opinion). However, the dissent also concedes, somewhat paradoxically, that evidence of a parent's reasonable progress following the statutory twelve-month period is admissible and relevant *to a degree*. *Id.* at 654, 554 S.E.2d at 33 (Hunter, J., dissenting) ("[e]vidence heard or introduced throughout the adjudicatory stage, as well as any addi-

tional evidence, may be considered by the court [in a termination of parental rights hearing],") (quoting *In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910) (2001) (first alteration in original). Yet to what degree or extent such evidence may be considered draws no further elaboration. Furthermore, although the dissent acknowledges the existence of evidence of progress or lack thereof in the case *sub judice*, it lent such evidence no credence at all, ostensibly because it fell outside the statutory period. Thus, two questions emerge: (1) What constitutes the twelve-month period prescribed in the statute ("within 12 months"), and (2) to what extent may a court consider evidence of reasonable progress that occurs outside the twelve-month period?

From a practical standpoint, one may easily define the twelve-month period in question when a petitioner files for termination of parental rights on the 366th day following the removal of the child from the home. Under such circumstances, a child has been in foster care or placed outside the home for "more than 12 months," and the measure for determining whether there has been reasonable progress "within 12 months" in correcting the conditions that led to the child's removal can only be the same twelve-month span. However, the measure for defining the parameters of "within 12 months" is not always so straightforward. For example, how is "within 12 months" to be defined in cases, as here, when a child is removed from the home and DSS does not petition the court for termination of parental rights until two years or more hence? The dissenting opinion at the Court of Appeals interprets the statute to mean "*within twelve months* of the child's placement outside the home or in foster care." *Id.* at 653, 554 S.E.2d at 32 (Hunter, J., dissenting). However, the cases cited by the dissent in support of its proposition, *id.* at 653-54, 554 S.E.2d at 32-33, are seemingly more ambiguous than they are definitive. For example, in *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. rev. denied*, 354 N.C. 218, 554 S.E.2d 341 (2001), the court held that the "evidence demonstrated that [respondent] had left [the child] in foster care for over twelve months without making reasonable progress toward reconciliation." However, a review of the facts and circumstances of the case reveals only that the trial court determined that the child had been outside the home for over twelve months. Notably, the court made no reference as to whether or not the parent at issue had shown the requisite progress within the initial twelve-month period of the child's absence. To the contrary, the trial court considered evidence of progress or lack thereof from the time the child was removed from the home, in March of 1996, until DSS peti-

tioned to terminate parental rights, in April of 1998—a span of over two years. *Id.* at 404-07, 546 S.E.2d at 171-73. Thus, the case fails to even address, no less establish, that the "within 12 months" period is one that commences at the time the child is removed from the home and ends twelve months thereafter. Other cases cited by the dissent appear equally ambiguous as far as establishing that the "within 12 months" period has been restrictively construed to include only evidence of reasonable progress that occurred during the immediate twelve months following the time a child has been placed in foster care or placed outside the home. In fact, all three cases suggest that the respective trial courts considered evidence of reasonable progress by the parent during the entire period of separation, not for *any* identifiable twelve-month span in particular. *See Oghenekevebe*, 123 N.C. App. at 440, 473 S.E.2d at 398 (respondent left child in foster care for *over* twelve months without showing reasonable progress); *In re Taylor*, 97 N.C. App. 57, 63, 387 S.E.2d 230, 233 (1990) (respondents failed to exhibit progress toward improving home conditions *during the period* in which their children were in foster care); *In re Bishop*, 92 N.C. App. 662, 670, 375 S.E.2d 676, 681-82 (1989) (trial court considered evidence of progress during entire interlude of separation, from 29 October 1984, the date the children were placed in foster care, through 5 February 1987, the date the petition was filed for termination of parental rights—a span of two years, four months).

The aforementioned span of inquiry as to "reasonable progress" on the part of the parent—from the time a child is placed outside the home until a petition for termination of parental rights is filed or, in the alternative, until the actual termination proceeding—was also imposed by the trial judge in the instant case. The expanded span of inquiry was also used by the majority at the Court of Appeals. Kristina was placed outside the home in late July or early August of 1997, DSS petitioned the trial court for termination of Ms. Cole's parental rights in June of 1999, and the termination proceeding was held in October and November of 1999. During the proceeding, the trial court allowed evidence concerning Ms. Cole's "reasonable progress" without regard to any specified twelve-month period. In fact, from a time-frame perspective, the evidence admitted ran the gamut from the time of Kristina's placement until the termination hearing. For example, in its findings of fact, the trial court found that Ms. Cole's *current* employment "required drug screening . . . [that] did not detect any illegal substance or usage." Similarly, documents were submitted indicating Ms. Cole's attendance in a counseling

program *through May of 1999.* Other evidence regarding Ms. Cole's progress dated back as far as the time the child was removed from the home, in August of *1997.* Thus, both the trial court and Court of Appeals majority considered progress evidence drawn not from a twelve-month period, as the statute would require, but rather from a two-and-a-half year span. As a consequence, neither this case nor its predecessors bring us any closer to deciphering what the legislature intended when it imposed the "within 12 months" limitation on evidence proffered to support or refute a parent's progress in correcting those conditions that led to the removal of her child.

From the outset, we reiterate our view that the cases cited by the dissent fail to establish that the "within 12 months" period is measured from the day a child is placed outside the home until 366 days thereafter. Moreover, as the very same cases aptly demonstrate, it would make little sense to impose such a time frame because important evidence of reasonable progress on the part of the parent might well be arbitrarily excluded by such an interpretation. Consider a case in which a child is removed from the home and placed in foster care due to his parent's drug use. After two years pass, Social Services petitions the court to terminate the parent's right to care for the child. During the termination proceeding, proffered evidence would show that in the first twelve months, the parent did little or nothing to abate her drug use and attended none of the counseling sessions urged by Social Services. However, other proffered evidence would show that during the second year of separation from her child, the parent successfully completed drug therapy, attended good parenting classes, procured a steady and good-paying job, and purchased a new home. Under such circumstances and their attendant time frame, which case law exhibits as commonplace, the question looms: Would it make any sense at all to consider only the progress made by the parent in the initial twelve-month period? Trial courts, by virtue of allowing expanded evidentiary windows on the issue of parental progress, certainly have rejected approaches that have interpreted the "within 12 months" edict to mean that admissible evidence must pertain to the first twelve months, as measured from the time a child is placed outside the home. Appellate courts have done likewise, and we concur with their view that N.C.G.S. § 7A-289.32(3) does not require a trial court to limit relevant evidence of parental progress to that which occurs in the initial twelve months of separation. As a consequence, we also disavow cases, if any, that may suggest otherwise.

**IN RE PIERCE**

[356 N.C. 68 (2002)]

However, at the same time, and despite the contrary view exhibited throughout our case law, we note that the "within 12 months" limitation cannot be construed in such fashion that it would allow the admission of progress evidence without regard to its specified time frame. The legislature specifically delineated that the "reasonable progress" evidentiary standard be measured in a twelve-month increment, and in our view, the twelve-month standard envisioned by lawmakers was "within 12 months" from the time the petition for termination of parental rights is filed with the trial court.[1] In support of our position, we note that evidence gleaned from the twelve-month period immediately preceding the petition would provide the trial court with the most recent facts and circumstances exhibiting a parent's progress or lack thereof. Thus, in the instant case, the trial court would consider all evidence pertaining to reasonable progress on the part of Ms. Cole during the twelve months prior to 24 June 1999, the date DSS petitioned the court to terminate her parental rights.

As to the dissenting opinion's conclusion that evidence of a parent's progress that falls outside the designated twelve-month period is admissible and relevant to a degree, *see Blackburn,* 142 N.C. App. at 613, 543 S.E.2d at 910 (2001), we agree. In a termination of parental rights proceeding, the trial court faces a two-fold task. In the so-called "adjudication stage" of the hearing, the trial court hears evidence in order to determine if grounds for termination exist. The petitioner has the burden of proving by clear, cogent and convincing evidence that at least one of the grounds set forth in N.C.G.S. § 7A-289.32 has been established. If such grounds for termination are so established, the trial court then moves to the so-called "disposition stage" in order to determine whether it is in the best interests of the child to terminate the parental rights. The controlling statute of the disposition stage provides as follows:

> Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child *unless the court shall further determine* that the best interests of the child require that the parental rights of such parent not be terminated.

---

1. The Court notes that during the 2001 session of the General Assembly, the legislature struck the "within 12 months" limitation from the existing statute detailing the requirements for establishing grounds for the termination of parental rights. *See* Act of June 15, 2001, ch. 208, sec. 6, 2001 Sess. Laws 111, 113. Thus, under current law, there is no specified time frame that limits the admission of relevant evidence pertaining to a parent's "reasonable progress" or lack thereof. *Id.*

N.C.G.S. § 7A-289.31(a) (1995) (emphasis added) (repealed effective 1 July 1999 and recodified in N.C.G.S. ch. 7B, art. 11). Thus, upon finding adequate grounds for termination of parental rights, the trial court is empowered to terminate such rights, but it is not obligated to do so if it further determines that it is not in the child's best interests to do so. This determination of best interests is more in the nature of an inquisition, with the trial court having the obligation to secure whatever evidence, if any, it deems necessary to make this decision. *Blackburn*, 142 N.C. App. at 613, 543 S.E.2d at 910. Either party may offer relevant evidence as to the child's best interests. *Id.* Such evidence may therefore include facts or circumstances demonstrating either: (1) the reasonable progress of the parent, or (2) the parent's lack of reasonable progress that occurred before or after the twelve-month period leading up to the filing of the petition for termination of parental rights.

Thus, in order to decide the instant case, we must first examine whether the trial court properly determined that there was ample evidence, gleaned from facts and circumstances occurring in the twelve months immediately preceding DSS' petition for terminating Ms. Cole's parental rights, to support its conclusion that she had failed to show that "reasonable progress under the circumstances ha[d] been made . . . in correcting those conditions which led to the removal of the child" (the adjudication stage evidence). Next, but only if we affirm the trial court's findings and conclusions with regard to Ms. Cole's progress, we must examine whether evidence of her actions outside the designated twelve-month period was properly considered by the trial court in deciding whether it was in the child's best interests to terminate her parental rights (the disposition stage evidence).

Because we agree with the Court of Appeals majority's conclusion that the trial court lacked adequate evidence supporting its conclusion that Ms. Cole had failed to show reasonable progress in correcting conditions during the allotted time frame, we need not address whether any additional evidence was given its proper due at the disposition stage. Thus, we confine our analysis to the factual findings and conclusions made by the trial court during the adjudication stage of the termination proceeding.

In the year leading up to DSS' petition to terminate Ms. Cole's parental rights, the undisputed facts and circumstances evidencing her progress towards correcting the conditions that led to Kristina's

**IN RE PIERCE**

[356 N.C. 68 (2002)]

removal included the following: (1) evidence that between November of 1998 and May of 1999, Ms. Cole attended a 26-week, drug abuse-related counseling program; (2) evidence that Ms. Cole successfully completed the treatment program; (3) evidence that Ms. Cole tested negative for drug use throughout her attendance at the program; (4) evidence that at the time of the termination hearing, Ms. Cole was attending meetings at Narcotics Anonymous; (5) testimony from a DSS caseworker that to the best of his knowledge, Ms. Cole had not tested positive for drugs in the twelve months prior to the hearing; (6) testimony from Kristina's Guardian ad Litem that she had interviewed Ms. Cole's substance abuse counselor, who said Ms. Cole had done very well and gave no indication Ms. Cole had any positive drug tests; (7) testimony showing that Ms. Cole resided with, and helped care for, her mother in Maryland throughout the period in question; (8) testimony showing that Ms. Cole is a registered nurse who worked regularly and successively for two employers in the home health field throughout the period in question; (9) testimony showing that in order to work for her current employer, Ms. Cole was subject to a prehiring drug test (which she apparently passed since she was hired by the employer). Other evidence indicating that Ms. Cole was subject to random drug screenings while working with her current employer is not relevant to our inquiry since she began such employment outside the twelve-month period in question.

Amid this evidence, the trial court peppered its findings of fact with the following subjective assessments (pertaining to circumstances within the relevant twelve months): (1) Ms. Cole had "clearly made herculean progress in overcoming her addictions"; (2) she "has made substantial progress in getting her own life back together"; (3) "in light of the progress made by . . . the Respondent. . ."; (4) Ms. Cole's decision to move to Maryland was "a wise decision for her"; and (5) "[t]he mother of the child is a fit and proper person for visitation."

Our study of the record and briefs reveals that any relevant evidence indicating that Ms. Cole had failed to show reasonable progress in correcting the conditions that led to the removal of Kristina—the legal standard for establishing grounds for the termination of her parental rights—included testimony regarding the concerns of DSS and Kristina's Guardian ad Litem that Ms. Cole had not definitively demonstrated success in her battle with drugs. DSS and the Guardian ad Litem also expressed their view that circumstances dictated it would be in the best interests of Kristina to remain with Mr. and

**IN RE PIERCE**

[356 N.C. 68 (2002)]

Mrs. Sellers, with whom she had developed strong ties. Ms. Cole's failure to maintain a consistent visitation schedule with Kristina was also discussed by witnesses during the proceeding, although the actual number and extent of her visits for the period in question remain unclear. Other evidence used by the trial court to demonstrate that Ms. Cole had failed to make reasonable progress included events and circumstances that took place or evolved outside the twelve-month period preceding the petition for termination. Thus, such evidence—including any that tended to show Ms. Cole used drugs and/or failed to obtain substance abuse treatment from August of 1997 through July of 1998—is irrelevant for purposes of establishing Ms. Cole's reasonable progress in correcting those conditions that led to the removal of her child.

In a termination proceeding, the appellate court should affirm the trial court where "the trial court's findings of fact are based upon clear[, cogent,] and convincing evidence and the findings support the conclusions of law." *In re Small*, 138 N.C. App. 474, 477, 530 S.E.2d 104, 106 (2000). In our view, there can be no such affirmation here because the relevant findings of fact do not support the trial court's conclusion that grounds for termination, as provided for in N.C.G.S. § 7A-289.32, have been established. In fact, we agree with the majority of the Court of Appeals and conclude that the relevant evidence pertaining to the time frame designated in the statute demonstrates, if anything, that Ms. Cole had indeed made "reasonable progress under the circumstances" in correcting the conditions that led to the removal of her child, Kristina.

Therefore, we affirm the Court of Appeals and hold that the trial court abused its discretion when it concluded the adjudicatory phase of the proceeding by deciding that there were adequate grounds to support the DSS petition for termination of Ms. Cole's parental rights. As a consequence of so holding, the trial court's decision in the disposition stage—to terminate Ms. Cole's parental rights—is hereby vacated.

AFFIRMED.