Issues
Respondent-Father asserts the trial court erred by denying Second Counsel's motion to continue the termination hearing and failing to address Second Counsel's motion to withdraw where serious issues of notice were raised, resulting in Respondent-Father being denied his right to fundamentally fair procedures. Respondent-Parents contend the trial court abused its discretion by terminating their parental rights to David after finding adoption was not likely.
Analysis
I. Respondent-Father's Motions to Continue and Withdraw
A parent is "entitled to procedures which provide him with fundamental fairness" in termination of parental rights proceedings. In re S.N.W. , 204 N.C. App. 556, 561, 698 S.E.2d 76, 79 (2010) ; see also In re K.N. , 181 N.C. App. 736, 737, 640 S.E.2d 813, 814 (2007) ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures[.]" (citation and quotation marks omitted) ). "[T]his Court has consistently vacated or remanded [termination of parental rights] orders when questions of 'fundamental fairness' have arisen due to failures to follow basic procedural safeguards." In re M.G. , 239 N.C. App. 77, 83, 767 S.E.2d 436, 441 (2015) (citation omitted). Among those procedural safeguards are the rights to counsel and notice of the termination hearing.
In termination of parental rights hearings, respondent-parents are entitled to notice of the hearing. N.C. Gen. Stat. § 7B-1106(a)(1) (2017). Further, a "parent has the right to counsel, and to appointed counsel in cases of indigency, unless the parent waives the right." N.C. Gen. Stat. § 7B-1101.1(a) (2017). A parent's right to counsel in these types of proceedings includes the right to the effective assistance of counsel. In re Dj.L. , 184 N.C. App. 76, 84, 646 S.E.2d 134, 140 (2007) (citation omitted). This Court has stated that, "after making an appearance in a particular case, an attorney may not cease representing a client without '(1) justifiable cause, (2) reasonable notice [to the client], and (3) the permission of the court.' " In re M.G. , 239 N.C. App. at 83, 767 S.E.2d at 440 (alteration in original) (quoting Smith v. Bryant , 264 N.C. 208, 211, 141 S.E.2d 303, 305 (1965) ). "The determination of counsel's motion to withdraw is within the discretion of the trial court, and thus we can reverse the trial court's decision only for abuse of discretion." Benton v. Mintz , 97 N.C. App. 583, 587, 389 S.E.2d 410, 412 (1990) (citation omitted). However, "[w]here an attorney has given his client no prior notice of an intent to withdraw, the trial judge has no discretion" and "must grant the party affected a reasonable continuance or deny the attorney's motion for withdrawal." Williams and Michael v. Kennamer , 71 N.C. App. 215, 217, 321 S.E.2d 514, 516 (1984). As a result,
before allowing an attorney to withdraw or relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent from a hearing, the trial court must inquire into the efforts made by counsel to contact the parent in order to ensure that the parent's rights are adequately protected.
In re D.E.G. , 228 N.C. App. 381, 386-87, 747 S.E.2d 280, 284 (2013) (emphasis added) (citing In re S.N.W. , 204 N.C. App. at 561, 698 S.E.2d at 79 ).
In In re S.N.W. , the respondent was not present at the termination hearing, and the respondent's counsel notified the court that he had had no contact with respondent besides a single phone message. 204 N.C. App. at 557-58, 698 S.E.2d at 77. The trial court made no further inquiry into respondent counsel's efforts to reach the respondent, and the trial court allowed counsel not to participate in the termination hearing. Id. at 558, 698 S.E.2d at 77. This Court found the record presented questions as to whether the respondent was afforded mandatory procedures to ensure him the fundamental fairness required in termination proceedings. Id. at 561, 698 S.E.2d at 79. Under such circumstances, "the trial court should have inquired further about [counsel's] efforts: (1) to contact [the r]espondent; (2) to protect [the r]espondent's rights; and (3) to ably represent [the r]espondent." Id. at 559, 698 S.E.2d at 78. This Court remanded to the trial court to determine whether the respondent "was afforded ... the proper procedures to ensure that his rights were protected[.]" Id. at 561, 698 S.E.2d at 79 ; see also In re D.E.G. , 228 N.C. App. at 388-89, 747 S.E.2d at 286 (holding the trial court erred by allowing the respondent-father's counsel to withdraw without any evidence that respondent-father had been notified of his counsel's intention to withdraw and without granting a continuance); In re M.G. , 239 N.C. App. at 84-85, 767 S.E.2d at 441-42 (reaching a similar result).
Although In re S.N.W. and the cited decisions that followed dealt with whether respondents were provided effective assistance of counsel, the present facts raise the same questions of fundamental fairness and require the same result. Here, the Record does not show Respondent-Father was provided any notice of First Counsel's withdrawal on 26 January 2018. First Counsel's Motion to Withdraw as Counsel failed to include a certificate of service showing Respondent-Father was notified of First Counsel's pending withdrawal or a recitation that Respondent-Father had been notified of the Motion, as required by our case law. See In re M.G. , 239 N.C. App. at 83, 767 S.E.2d at 440 (requiring attorney provide client with "reasonable notice" before ceasing representation (citation omitted)). In addition, the trial court's Order to Withdraw also failed to include any documentation showing Respondent-Father received notice of the Order allowing First Counsel's withdrawal and the substitution of Second Counsel.
The Record also establishes Respondent-Father likely did not have notice of the 27 June 2018 termination hearing or his attorney's intention to seek withdrawal at this hearing. On the day of the hearing, Respondent-Father was not present, and his attorney, Second Counsel, advised the trial court that Respondent-Father likely was unaware of the termination hearing. Specifically, Second Counsel stated he had had no contact information for Respondent-Father and "no way to get in touch with him," and did not know whether his appointment or contact information was communicated to Respondent-Father. Although Second Counsel stated he spoke with Respondent briefly "within the last couple months," Second Counsel "offered no elaboration as to what discussion, if any, they had about [Respondent-Father's termination] hearing and the potential consequences that might follow if [Respondent-Father] failed to appear." In re M.G. , 239 N.C. App. at 84, 767 S.E.2d at 441. Further, as in In re S.N.W. , the "trial court made no extended inquiry" regarding Second Counsel's efforts to communicate with Respondent-Father. The trial court's failure to inquire into Second Counsel's efforts to contact Respondent-Father was error. See In re D.E.G. , 228 N.C. App. at 386-87, 747 S.E.2d at 284 (holding "before ... relieving an attorney from any obligation to actively participate in a termination of parental rights proceeding when the parent is absent ..., the trial court must inquire into the efforts made by counsel to contact the parent" (citation omitted) ).
This Court has recognized a parent may waive the right to counsel by non-participation in the termination proceeding. See In re R.R. , 180 N.C. App. 628, 636, 638 S.E.2d 502, 507 (2006). However, "the record before us raises questions as to whether [Respondent-Father] was afforded with the proper procedures to ensure that his rights were protected during the termination of his parental rights to the minor children." In re S.N.W. , 204 N.C. App. at 561, 698 S.E.2d at 79. We reiterate this Court's statement in In re S.N.W. that the record contains evidence "which casts doubt on [Respondent-Father's] ability to parent. Nonetheless, [Respondent-Father] is entitled to procedures which provide him with fundamental fairness in this type of action." Id.
"Accordingly, we remand for determination by the trial court regarding efforts by [Second Counsel] to contact and adequately represent [Respondent-Father] at the termination of parental rights hearing and whether [Respondent-Father] is entitled to appointment of counsel in a new termination of parental rights proceeding." Id. The trial court must inquire about Second Counsel's efforts to contact Respondent-Father and to protect Respondent-Father's rights, and Second Counsel's ability to represent Respondent-Father. See id. at 559, 698 S.E.2d at 78. On remand, the trial court should also consider whether Respondent-Father has waived his right to effective counsel. See In re R.R. , 180 N.C. App. at 636, 638 S.E.2d at 507. Because we remand the Termination Order as to Respondent-Father, we need not address his remaining argument.
II. Respondent-Mother's Appeal
As to Respondent-Mother, we note that although she was also absent from the termination hearing, Respondent-Mother does not contest that she received proper notice of the hearing. Respondent-Mother only challenges the trial court's determination that it was in David's best interest to terminate her parental rights. Therefore, we only address whether the trial court abused its discretion by determining it was in David's best interest to terminate Respondent-Mother's parental rights.[2]
"After an adjudication that one or more grounds for terminating a parent's rights exist" under N.C. Gen. Stat. § 7B-1111(a), the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2017). The trial court must consider the following factors in making its determination:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
Id.
"Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." In re Blackburn , 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). "Either party may offer relevant evidence as to the child's best interests." In re Pierce , 356 N.C. 68, 76, 565 S.E.2d 81, 86 (2002) (citation omitted). "Such evidence may therefore include facts or circumstances demonstrating either: (1) the reasonable progress of the parent, or (2) the parent's lack of reasonable progress that occurred before or after ... the filing of the petition for termination of parental rights." Id. at 76, 565 S.E.2d at 86-87. "In determining the best interests of the child, the trial court should consider the parent's right to maintain their family unit, but if the interest of the parent conflicts with the welfare of the child, the latter should prevail." In re Parker , 90 N.C. App. 423, 431, 368 S.E.2d 879, 884 (1988) (citation omitted).
We review the trial court's conclusion that a termination of parental rights would be in the best interest of the child on an abuse of discretion standard. In re V.L.B. , 168 N.C. App. 679, 684, 608 S.E.2d 787, 791 (2005) (citation omitted). Dispositional findings are binding on appeal if they are supported by any competent evidence. See In re C.M. , 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007). We are also bound by any findings not specifically contested by the respondent. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). "As a discretionary decision, the trial court's disposition [under N.C. Gen. Stat. § 7B-1110(a) ] will not be disturbed unless it could not have been the product of reasoning." In re A.J.M.P. , 205 N.C. App. 144, 152, 695 S.E.2d 156, 161 (2010) (citation omitted).
Respondent-Mother argues the statutory factors do not support termination in this case and the only Finding of Fact that supports terminating her parental rights is not supported by competent evidence. Specifically, Respondent-Mother challenges the trial court's Finding of Fact 72, which states, "Of equal importance, terminating the rights of the Respondents will aid ... [David] in moving on with [his life] and in meeting [his] potential." Respondent-Mother contends Finding of Fact 72 is not supported by competent evidence because the "only evidence presented [to support this finding] was the social worker's 'belief' that ... termination would help David."
However, because the trial court's additional Findings of Fact, which Respondent-Mother does not contest, support the trial court's determination, we do not address Respondent-Mother's contentions regarding Finding of Fact 72. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (Where "ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error." (citation omitted) ). The trial court found the following facts reflecting its consideration of the factors listed in N.C. Gen. Stat. § 7B-1110(a) :
10. Further, the Court took judicial notice that in all prior orders, the court found that it was in the juveniles' best interest to remain in the custody and care of DSS and would be contrary to the best interest of the juveniles to be returned to either parent or the home.
....
16. The family had prior agency history, and during the course of the juvenile proceedings, multiple juveniles made disclosures about physical and sexual abuse, and neglect, that the minor children experienced while in the care of their parents, all of which were ultimately substantiated by [DSS].
....
44. [DSS] had continual concerns over the life of the case regarding the interactions between the Respondent Parents and the minor children, as well as the children's placement providers and therapists, during supervised phone calls.
45. The social worker's testimony detailed the documented invective of the parents towards the minor children, especially [David] and [Vivian], their placement providers, and the children's therapists, during their visits and supervised telephone calls with the children, and the Court, in its findings of fact, incorporated said testimony, as if fully set forth.
....
49. The Respondent Mother visited the minor children regularly, but she continued to speak negatively to and about [David] and [Vivian], and sought to to [sic] isolate the two older children from their siblings and the Respondent Parents.
....
51. The Respondent Parents instructed the seven younger children to disown [Vivian] and [David].
52. The Respondent Parents threatened [Vivian] and [David] regarding their disclosures about sexual and physical abuse and neglect the children had experienced while in the care of their parents, prior to the minor children's Child Medical Exams and/or their testimony in court.
....
55. The Respondent Parents were resistant and disruptive to the reunification efforts made by [DSS] during the life of these proceedings.
56. The Respondent Parents were unable or unwilling to attain the stability necessary for the safe return of the minor children to their care, and their lack of stability caused the bonds of the family to be further eroded during the life of this case.
57. Due to the Respondent Parent's willful actions, neither Respondent alleviated the conditions for which the minor children were initially removed, and the neglect of the Respondents would likely be repeated, if the minor children were returned to their care.
58. During the Disposition Hearing of this matter, the court received testimony of the social worker, as to the nature of the relationship between Respondent Parents and the minor children.
59. The children resided in horrendous circumstances and endured extraordinary circumstances, especially [David] and [Vivian].
60. Any bonds that the older children might have with the Respondent Parents would be wholly inappropriate.
....
64. [David] is 15, and it is not likely that he would be adopted; however, his permanent plan of care is custody or guardianship with a court approved other, which is not improbable.
....
75. The Respondent Parents have not communicated with [DSS] to inquire about the health and well-being of their children since December 14, 2017.
....
78. The minor children have now been in the custody of [DSS] for 20 months, and it is in the best interest of the juveniles to have a safe, permanent home, which the Respondent Parents are unwilling or unable to provide.
Respondent-Mother does not contest these Findings of Fact on appeal; therefore, they are binding on this Court. See Koufman , 330 N.C. at 97, 408 S.E.2d at 731 ; see also In re Blackburn , 142 N.C. App. at 613, 543 S.E.2d at 910 (holding a trial court can consider evidence heard during the adjudicatory stage in the dispositional stage). We hold these Findings of Fact show the trial court considered the relevant factors under N.C. Gen. Stat. § 7B-1110(a) and support the trial court's conclusion that terminating Respondent-Mother's parental rights to David was in the child's best interest. See In re A.J.M.P. , 205 N.C. App. at 152, 695 S.E.2d at 161.
Respondent-Mother also points this Court to In re J.A.O. , where this Court reversed a trial court's order terminating a mother's parental rights because this Court was "unconvinced that the remote chance of adoption ... justifies the momentous step of terminating [the mother's] parental rights." 166 N.C. App. 222, 228, 601 S.E.2d 226, 230 (2004). Because David faced similar prospects of adoption, Respondent-Mother contends the trial court abused its discretion in terminating her parental rights. However, the facts of In re J.A.O. are in stark contrast to the facts here, requiring a different result.
In In re J.A.O. , the respondent made reasonable progress in her case plan but simply could not provide the care the child needed. Id. at 224-26, 601 S.E.2d at 228-29. The trial court found adoption was unlikely, given the child's disabilities, behavior problems, and age. Id. at 227, 601 S.E.2d at 230. Further, the guardian ad litem argued it was in the child's best interest not to terminate respondent's parental rights. Id. at 226-27, 601 S.E.2d at 229-30. Here, the trial court found that Respondent-Mother failed to make any progress on her case plan and that any connection David had with Respondent-Mother would be "wholly inappropriate," given her repeated attempts to belittle David and alienate him from his siblings. In addition, the guardian ad litem argued termination of Respondent-Mother's parental rights was in David's best interest. In re J.A.O. is therefore inapposite.
Here, the trial court made the necessary and relevant findings under N.C. Gen. Stat. § 7B-1110(a), and those findings demonstrate a reasoned decision within the trial court's discretion. We conclude the trial court did not abuse its discretion and affirm the decision of the trial court terminating Respondent-Mother's parental rights to David.
Conclusion
Accordingly, we remand for further proceedings the portion of the trial court's 27 June 2018 Termination Order terminating Respondent-Father's parental rights. We affirm the portion of the Termination Order terminating Respondent-Mother's parental rights to David.
REMANDED; AFFIRMED IN PART.
Report per Rule 30(e).
Judge ZACHARY concurs.
Judge BERGER concurs in a separate opinion.
BERGER, Judge, concurring in separate opinion.
I concur with the majority opinion. However, I cannot agree with the majority that documentation that a parent actually received notice of an order allowing withdrawal of counsel is required for "fundamental fairness."

We note Respondent-Mother does not challenge the Termination Order regarding the seven youngest children.